UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RONEL BONIFACIO SUAZO *and* EDWIN
AREVALO RAMOS

                              Plaintiffs,

– *against* –

OCEAN NETWORK EXPRESS (NORTH
AMERICA), INC., DANESI U.S.A., INC., *and*
GENESIS GLOBAL SOLUTIONS CORP.,

                              Defendants.

DANESI U.S.A., INC.,

                    Third-Party Plaintiff,

– *against* –

SAVEMA S.P.A.,

                    Third-Party Defendant.

**OPINION & ORDER**

20-cv-2016 (ER)

U̲R̲A̲M̲O̲S̲, D.J.:

        Ronel Bonifacio Suazo and Edwin Arevalo Ramos bring this negligence action

against Ocean Network Express (North America), Inc., Danesi U.S.A., Inc., Genesis

Global Solutions Corp., and Savema S.P.A. (collectively "Defendants").  Plaintiffs

suffered serious injuries when unloading a shipment of marble slabs from a shipping

container they allege was improperly secured.  They allege this was due to the negligence

of Defendants and bring a claim of common law negligence and claims under §§ 200,

240, and 241(6) of the Labor Law of the State of New York ("NYLL").  Before the Court

are the motions of Danesi and third-party defendant Savema S.P.A. for summary

judgment.  Savema also moves to exclude the report and testimony of Plaintiffs' expert,

Joseph J. McHugh.  For the reasons set forth below, Danesi's motion for summary

judgment is granted.  Savema S.P.A.'s motion for summary judgment is granted in part and denied in part and its motion to exclude Plaintiff's expert testimony is denied.

## I.     BACKGROUND

### A.  Factual background

Suazo and Ramos were employees of Colonna Marble, Inc. located at 1320 Garrison Avenue, Bronx, New York.  Doc. 33 ¶ 59, 145.  On July 3, 2019, Plaintiffs were unloading marble slabs at the Colonna Marble warehouse and were injured when the slabs became unstable and landed directly on Suazo and partially on Ramos.  *Id.* ¶¶ 79, 81, 83, 125, 211.  A total of fourteen marble slabs, arranged in two bundles of seven and separated by a wooden rack system, had been shipped from Italy in a 20-foot shipping container.  Doc. 53 ¶¶ 10–11.  Each individual slab of marble weighed approximately 900 pounds.  *Id.* ¶ 8.

Third-party defendant Savema S.P.A. ("Savema") is an Italian company that sells marble stone and slabs to marble companies.  Doc. 56 ¶ 3.  Jasmine Lam, a New York City interior decorator, entered into a contract with Savema to purchase fourteen marble slabs to be delivered to Colonna Marble.  Doc. 56-3 at 6, *see also* Doc. 56-4 at 1, Doc. 57-11 at 48:9.  She hired Colonna Marble to cut the marble to size and make a delivery to a jobsite.  Doc. 57-11 at 49:23–25.

Defendant/third-party plaintiff Danesi U.S.A., Inc. ("Danesi") is an ocean transportation intermediary ("OTI") licensed as an ocean freight forwarder and as a non-vessel operating common carrier ("NVOCC").  Doc. 50-2 ¶ 3.  Savema and Danesi entered into a maritime bill of lading in which Danesi would arrange for the shipment of the marble from Italy to New York, with door delivery in the Bronx to Colonna Marble.  Doc. 56-4 at 1, *see also* Doc. 50-2 ¶ 17.  According to their contract, Savema was

responsible for the safe loading of the cargo into an ocean shipping container prior to turning the container over to an ocean carrier at the port of La Spezia Italy. *Id. See also* Doc. 15 ¶ 14.

Upon confirmation from Savema, Danesi booked the shipment with defendant Ocean Network Express (North America), Inc. ("Ocean Network").  Doc. 50-2 ¶ 11. Ocean Network is a business that transports marble and other materials.  Doc. 33 ¶ 45. Two bills of lading were issued covering the same cargo.  The first bill of lading was issued by Ocean Network (the ocean carrier), and Danesi, as the NVOCC, was the shipper and consignee of the cargo.  Doc. 50-2 at 9.  In the second bill of lading, issued by Danesi, Jasmine Lam Interiors was listed as the consignee and Savema as the shipper. Doc. 56-4 at 1.

In their amended complaint, the Plaintiffs alleged that the accident and injuries were caused by Defendants' negligence in failing to use a truck properly suited for the job or proper equipment to unload the marble, and otherwise unloading, managing, and handling the marble in a negligent and careless manner.  Doc. 33 ¶¶ 126, 166, 212. Plaintiffs demand damages in the sum of $15 million.  Doc. 1-4.

### B.  The Accident

On July 13, 2019, Jose Andres Martinez, an officer of Colonna Marble, was supervising the Plaintiffs as they unloaded the marble from the shipping container.  *See* Plaintiffs' Counterstatement of Material Facts to Savema, Doc. 59 ¶ 20.  Neither Ramos nor Suazo had safety training for their work in Colonna and neither had experience removing stone slabs from a shipping container.  *Id.* ¶¶ 26–27.  Martinez directed Suazo to use a saw to cut through the wood framing that was supporting the marble slabs, and under his supervision and direction, Suazo stood in the center of the shipping container as

he removed the wood supports, standing in the "fall shadow" of the marble slabs.  *Id.* ¶¶
30–31.  Martinez also directed Plaintiffs to hold up the 6,300-pound bundle of marble
slabs in case the slabs moved while the wooden supports were being cut away.  *Id.* ¶ 32.
After Suazo removed two of the three wooden beams supporting the slabs and holding
the slabs apart, the wood framing gave way and the slabs on one side of the container
began to fall, *id.* ¶ 34, Plaintiffs were unable to hold up the falling slabs and were injured.
*Id.* ¶ 38.  Plaintiffs assert that Colonna did not use safe stone handling procedures for
removing the marble slabs.  *Id.* ¶ 41.  After the first bundle of marble fell, Colonna hired a
boom truck to remove the second bundle without incident.  *Id.* ¶ 43.

### C.  Procedural background

Plaintiffs filed their initial complaint on January 8, 2020 against Ocean Network,
Danesi, and Genesis,[1] in the Supreme Court of New York, Bronx County ("Bronx
Supreme Court").  Doc. 1-1.  Ocean Network answered on February 6, 2020.  Doc. 1-2.
Danesi answered on February 25, 2020.  Doc. 1-6.  Genesis did not respond and has
never appeared in this case.

Ocean Network removed the action from Bronx Supreme Court to this Court on
March 6, 2020.  Doc. 1.  On December 30, 2020, Danesi brought a third-party complaint
against Savema, the company that loaded the marble into the shipping container in Italy.
Doc. 15.  Savema filed its answer on May 18, 2021.  Doc. 28.

Plaintiffs then filed an amended complaint on June 14, 2021, to assert cross
claims against Savema.  Doc. 33.  The claims against all defendants are identical.

---

[1] Genesis Global Solutions, Corp. ("Genesis") is a business that transports marble and other materials.
Doc. 33 ¶ 85.

Plaintiffs allege a single claim of common law negligence and claims under §§ 200, 240, and 241(6) of the NYLL.  Doc. 1-1.

All claims asserted by Plaintiffs against Ocean Network were dismissed on December 17, 2021.  Doc. 44.  On February 1, 2022, Ocean Network, Danesi, and Savema stipulated to dismiss all claims asserted against each other.  Doc. 46.  Thus, the only claims remaining are Plaintiffs' claims against Danesi, Genesis, and Savema. Danesi and Savema moved for summary judgment on March 10, 2022.  Docs. 50, 52.  In its motion Savema also moves to exclude the report and testimony of Plaintiffs' rebuttal expert, Joseph J. McHugh.  Doc. 64.

## II.    STANDARD OF LAW

### A.  Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (*citing SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706

F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co*., 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc*., 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp*., 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found*., 51 F.3d 14, 18 (2d Cir. 1995). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

For claims under New York law, the Court should determine how the New York Court of Appeals would decide them. *Reddington v. Staten Island Univ. Hosp*., 511 F.3d 126, 133 (2d Cir. 2007) (citation omitted). Decisions from New York's intermediate appellate courts are helpful indicators, but this Court is not bound by those decisions. *Id.* (internal quotation marks and citations omitted).

### B.  Excluding Expert Testimony

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Pursuant to this Rule:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony

6

is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The party offering the testimony has the burden of establishing its admissibility by a preponderance of the evidence.  *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987).

"As the Supreme Court explained in *Daubert*, Rule 702 requires the district court to ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"  *Ruggiero v. Warner-Lambert Co*., 424 F.3d 249, 253 (2d Cir. 2005) (citing *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 589 (1993)).  In interpreting Rule 702, district courts, under *Daubert*, may consider the following non-exhaustive list of factors to determine whether evidence is sufficiently reliable:  (1) whether a theory or technique had been and could be tested, (2) whether it had been subjected to peer review, (3) what its error rate was, and (4) whether scientific standards existed to govern the theory or technique's application or operation.  *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005).  In *Kumho Tire Co. v. Carmichael*, the Supreme Court held that the trial judge's gatekeeping obligation applies not only to testimony based on "scientific" knowledge, as in *Daubert*, but also to testimony based on "technical" or "other specialized" knowledge.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141  (1999).

Additionally, a proposed expert witness must be, in fact, an expert in the area about which he or she intends to testify.  *Nimely*, 414 F.3d at 396 n.11.  The Second Circuit has explained that the question of whether the expert is indeed qualified is important because under the Federal Rules of Evidence, an expert witness has "substantially more leeway than 'lay' witnesses" in testifying as to opinions that are not based on his or her perception.  *Id.*  As Rule 702 states, an expert may be qualified by virtue of his or her "knowledge, skill, experience, training, or education[.]"  The "totality of a witness'[] background" matters.  *Arista Records LLC v. Usenet.com, Inc*., 608 F. Supp. 2d 409, 422 (S.D.N.Y. 2009).  The witness'[] background only qualifies him or her

to testify about the "issues or subject matter[s] within his or her area of expertise." *Haimdas v. Haimdas*, 2010 WL 652823, at *2 (E.D.N.Y. Feb. 22, 2010) (citing *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 80 (2d Cir. 1997)).  The district judge thus must "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony."  *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).  After all, "an expert who is qualified in one field cannot offer an opinion about aspects of the case in another field for which she is not qualified." *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 2008 WL 1971538, at *6 n.48 (S.D.N.Y. May 7, 2008).

## III.    DISCUSSION

Suazo and Ramos bring a common law negligence claim and claims under §§ 200, 240, and 241(6) of the NYLL.  The bases for the motions filed by Danesi and Savema are largely similar and will be discussed in tandem.

As a preliminary matter, Plaintiffs raise in their opposition, for the first time, two claims Defendants oppose as improper:  a claim under the International Maritime Dangerous Goods Code ("IMDGC") against Danesi and a failure to warn claim against Savema.  Because "[a] party may not raise new claims for the first time in response to a motion for summary judgment" this Opinion does not consider those claims.  *See Cooney v. Consol. Edison*, 220 F. Supp. 2d 241, 253 (S.D.N.Y. 2002), *aff'd*, 63 F. App'x 579 (2d Cir. 2003); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010) ("It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment."); *Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010) ("[C]ourts generally do not consider claims or completely new theories of liability asserted for the first time in opposition to summary judgment.").

### A.  NYLL § 200

Section 200 of the NYLL states:

> All places to which this chapter applies shall be so constructed, equipped,
> arranged, operated and conducted as to provide reasonable and adequate
> protection to the lives, health and safety of all persons employed therein or
> lawfully frequenting such places.  All machinery, equipment, and devices
> in such places shall be so placed, operated, guarded, and lighted as to
> provide reasonable and adequate protection to all such persons.

NYLL § 200(1).  Section 200 is a codification of the common-law duty of an owner or

general contractor to ensure that construction sites are safe places to work.  *Buono v.*

*AvalonBay Communities, Inc.*, No. 19 Civ. 5413 (LGS), 2021 WL 51524, at *4 (S.D.N.Y.

Jan. 6, 2021).  Courts generally analyze § 200 claims and common law negligence

simultaneously.  *Id.*  A plaintiff "must demonstrate the existence of a duty, the breach of

which may be considered the proximate cause of the damages suffered by the injured

party."  *Dos Santos v. A. Corradi Builders, Inc.*, No. 5 Civ. 3341 (KMK) (LMS), 2008

WL 11517447, at *3 (S.D.N.Y. Sept. 26, 2008) (internal quotation marks omitted).  "If

one of these essential elements is absent ..., as a matter of law, then the rest of the

plaintiff['s] case is immaterial, and summary judgment for the defendant[] is

appropriate."  *Carley v. Theater Dev. Fund*, 22 F. Supp. 2d 224, 227 (S.D.N.Y. 1998).

Under § 200, the duty of an owner or employer to ensure a safe work site may

only arise when a party has "the authority to control the injury-causing activity to enable

it to avoid or correct unsafe conditions."  *Corrales-Patino v. Procida Constr. Corp.*, No.

19 Civ. 5579 (ER), 2021 WL 5331528, at *8 (S.D.N.Y. Nov. 15, 2021).  Liability

requires that a defendant "had actual or constructive notice of the condition complained

of and exercised supervision or control over the work performed by the plaintiff."  *Id.*

(citing *Wilson v. City of New York*, 89 F.3d 32, 28 (2d Cir. 1996)).  "A defendant has the

authority to supervise or control the work for purposes of section 200 when the defendant bears the responsibility for the manner in which the work is performed." *Kiss v. Clinton Green N., LLC*, No. 17 Civ. 10029 (LGS), 2020 WL 4226564, at *5 (S.D.N.Y. July 23, 2020) (citation omitted).

Danesi argues that it had absolutely no control over the environment in which the Plaintiffs worked and were injured.  Doc. 50-3 at 12.  Savema similarly argues that because it is a foreign supplier in a chain of commerce, and had no direct ability to control the manner in which Plaintiffs unloaded the marble, there can be no § 200 liability.  Doc. 54 at 18.

Accordingly, Danesi and Savema argue that, under § 200, they owed no duty to Plaintiffs and therefore the negligence claim must be dismissed.  Docs. 54, 50.  The Court agrees that Danesi and Savema did not have sufficient supervisory control of the unloading of the marble and thus owed no duty of care to Plaintiffs under § 200.  It is undisputed that "Savema ha[d] no right or authority to control, direct, or supervise the activity of the warehouse workers" and that employees at Colonna Marble, which is not a party to this litigation, had the ability to control the method in which Plaintiffs would unload the marble.  *See* Plaintiffs' Counterstatement of Material Facts to Savema, Doc. 59 ¶¶ 6, 20, 30–32.

Because the essential element of duty is absent, there can be no liability under § 200.  Thus, the Court grants Danesi's and Savema's motions for summary judgment as to the claims under § 200.

### B.  NYLL §§ 240 and 241(6)

Section 240 of the NYLL states:

> All contractors and owners and their agents, ... in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

NYLL § 240(1).  Section 241(6) of the New York Labor Law states:

> All contractors and owners and their agents ... when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements: ... All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.

NYLL § 241(6).  Section 240(1) protects only against accidents involving construction work and § 241(6) only applies for work taking place at a construction site.  *See Flores v. ERC Holding LLC*, 87 A.D.3d 419, 421 (1st Dep't 2011) (dismissing claims when at the time of the accident plaintiff was not engaged in construction work within the meaning of Labor Law § 240 (1) and was not working in a construction area within the meaning of Labor Law § 241 (6)).

The Court finds that neither statute applies to the accident at Colonna Marble, which is a warehouse, and therefore dismisses these claims against both Danesi and Savema.  Section 240(1) applies to "erection, demolition, repairing, altering, painting, cleaning or pointing" of a structure.  *See Joblon v. Solow*, 945 F.Supp. 734, 739 (S.D.N.Y. 1996) (ruling that the installation of a clock is outside of the scope of NYLL § 240(1)) (citation omitted).  Section 241(6) applies to "[a]ll areas in which construction, excavation or demolition work is being performed."  NYLL § 241 (6).  There is no allegation Plaintiffs were performing any such work.  In their respective responsive briefs

to Danesi and Savema's motions, the Plaintiffs fail to address the NYLL arguments altogether, seemingly abandoning their claims under the NYLL.  Accordingly, the Court grants Danesi's and Savema's motion for summary judgment as to the §§ 240 and 241(6) claims.

### C.  Common Law Negligence

To prevail on a claim for negligence Plaintiffs must establish duty, a breach of that duty, proximate causation, and damages.  *Bah v. Everlast Logistics, LLC*, 297 F. Supp. 3d 426, 431 (S.D.N.Y. 2018) (citation omitted).  At the summary judgment stage, the movant has the burden of showing that no genuine factual dispute exists.  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  If the movant makes that showing, the burden then shifts to the party opposing summary judgment to "designate specific facts showing that there is a genuine issue for trial" and present evidence that is sufficient to satisfy every element of the claim.  *CelotexCorp. v. Catrett*, 477 U.S. 317, 324 (1986).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322.

As a preliminary matter, Plaintiffs asks the Court to take judicial notice of the U.S. Department of Labor's Occupational Safety and Health Administration Safety and Health Information Bulletin entitled "Hazards of Transporting, Unloading, Storing and Handling Granite, Marble and Stone Slabs" ("OSHA Bulletin").  *See* SHIB 08-12-2008; *see also* Doc. 49-10.  The OSHA Bulletin details the risks inherent in moving, loading,

and unloading stone slabs and discusses ways to minimize the hazards associated with these tasks.

Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The court may take judicial notice of a fact on its own and must take judicial notice of a fact if a party requests it and the court is supplied with the necessary information.  Fed. R. Evid. 201(c).  Because "it is clearly proper to take judicial notice" of information "retrieved from official government websites," and the OSHA Bulletin is published by the Department of Labor and available on a government website,[2] the Court takes judicial notice of it.  *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (collecting cases).

*1.  Danesi's motion for summary judgment*

In their complaint, Plaintiffs allege that Danesi was negligent in its "operation, maintenance, use, supervision, control, loading, …  management, manning and off-loading of the truck used to make the delivery of marble … to Colonna Marble Inc."  Doc. 33 ¶ 166.

Danesi argues that Plaintiffs fail to establish that Danesi owed any duty of care because it never had physical possession of the container.  Doc. 50-3 at 11.  Plaintiffs

---

[2] United States Department of Labor, *Hazards of Transporting, Unloading, Storing and Handling Granite, Marble and Stone Slabs*, Safety and Health Information Bulletin 08-12-2008, https://www.osha.gov/publications/shib081208 (last visited Feb. 26, 2023).

contend that Danesi had a duty to warn under maritime law and, in the alternative, can be held strictly liable under maritime principles.  Doc. 62 at 7–8.

a.  *Duty to warn*

Danesi argues that, as an ocean transportation intermediary and an NVOCC, it merely acted as a facilitator of the transportation of the marble cargo.  Doc. 50-3 at 4–5, 10.  Danesi maintains that it "was not involved in the loading of the marble slabs into the container and was not involved in removing the marble slabs from the container."[3]  Doc. 50-1 ¶ 15.  Instead, Danesi made phone calls and sent email messages that arranged the many legs of travel from Italy to the Bronx.  *Id.* at 10–11; *see also* Doc. 63 at 3.  Having never had physical contact with the container loaded by Savema in Italy and no experience with the mechanics of preparing marble slabs for shipment, Danesi maintains that imposing a duty to inspect would be unreasonable.  Doc. 50-3 at 11.

In response, Plaintiffs proffer a two-part argument to establish a duty to warn:  1) that as an NVOCC, Danesi was also the shipper/an agent, and 2) as a shipper/agent, Danesi did in fact have a duty to warn because marble slabs are inherently dangerous.  Doc. 62 at 3–4.

In support of the first part of their argument, Plaintiffs cite general maritime law and seek "a good faith expansion" of the law of liability that applies to shippers to NVOCCs.  Doc. 62 at 1.  Plaintiffs argue that "a shipper has a duty to warn the stevedore and the ship owner of the foreseeable hazards inherent in the cargo of which the stevedore and the ship's master could not reasonably have been expected to be aware,"

---

[3] It is undisputed that Danesi did not own the vessel or container in which the marble was shipped, nor had control over the loading of the marble onto the shipping containers.  *See* Doc. 61 ¶¶ 2, 5.

*Contship Containerlines, Ltd. v. PPG Industries, Inc.*, 442 F.3d 74, 78 (2d Cir. 2006) (quoting *Ente Nazionale Pre L'Energia Electtrica v. Baliwag Navigation, Inc.*, 774 F.2d 648, 655 (4th Cir. 1985)), and propose that they stand in the same place as any stevedore, and therefore were owed a duty to warn.  Doc. 62 at 4.  Plaintiffs argue that Danesi, as an NVOCC is an agent of the shipper and therefore also owes Plaintiffs this duty to warn. The Court declines to expand the law of liability that shippers are subject to and apply it to NVOCCs.  Likewise, the Plaintiffs do not stand in the place of stevedores and are not owed a duty to warn.  Further, the "turnover duty"[4] that Plaintiffs refer to is a requirement placed upon the vessel owner, not an NVOCC like Danesi.

To establish the second part of their argument—that marble slabs are a dangerous good and therefore Danesi had a duty to warn—Plaintiffs invoke the IMDGC.[5] The Court will not consider the IMDGC, and therefore cannot find, without more, that marble slabs are an inherently dangerous good.  To defeat a motion for summary judgment, Plaintiffs "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467–68.  Plaintiffs have failed to do so regarding the danger of marble slabs to move their duty to warn theory forward.

---

[4] "Turnover duty" refers to a set of obligations the vessel owners have before turning over the ship or any portion of it to the stevedore.  *Gravatt v. City of New York*, 226 F.3d 108, 121 (2d Cir. 2000).

[5] Plaintiffs improperly brings a claim under the International Maritime Dangerous Goods Code for the first time in their opposition.  Because "[a] party may not raise new claims for the first time in response to a motion for summary judgment" this Opinion does not consider this claim.  *See Cooney v. Consol. Edison*, 220 F. Supp. 2d 241, 253 (S.D.N.Y. 2002), *aff'd*, 63 F. App'x 579 (2d Cir. 2003); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010) ("It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment.").

*b.  Strict Liability*

Plaintiffs next argue that under maritime principles a shipper and NVOCC may be held strictly liable for damages and expenses resulting directly or indirectly from shipments of *inherently dangerous goods* when neither the shipper nor the carrier had actual or constructive knowledge of the goods' dangerous nature.  Doc. 62 at 8.  First, as discussed above, Plaintiffs have not established that marble slabs are an inherently dangerous good.  Plaintiffs cite the Carriage of Good by Sea Act ("COGSA") as legal authority for their strict liability claim.  COGSA applies to "every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade."  46 U.S.C.A. § 30701.  This case involves two bills of lading.  *See* Docs. 50-2 at 9, 56-4 at 1.

Nevertheless, COGSA regulates the carriage of cargo, not the protection of individuals who may be injured by the cargo.  *See Sea-Land Services, Inc. v. Trans Fresh Corp.,* 1980 WL 570168, at *1 (S.D.N.Y.  Feb. 5, 1980) ("COGSA does not deal with the obligations of shipper, carrier or ship to a third person who has suffered personal injuries.").

Thus, Plaintiff's strict liability claim must also fail.  Plaintiffs have failed to establish any duty on the part of Danesi, under any theory, and have not identified specific facts and affirmative evidence that contradict those offered by Danesi to demonstrate that there is a genuine issue for trial.  Accordingly, Danesi's motion for summary judgment is granted.

2. *Savema's motion for summary judgment*

Plaintiffs argue that Savema owes them a duty of care under a contractual obligation theory in which a contract imposes a duty in favor of the promisee and the intended third-party beneficiaries.  Doc. 58 at 3.  While Plaintiffs concede that they were neither a party to the contract between Savema and Lam (the interior designer), nor an expressly intended third-party beneficiary, they argue that because their employer, Colonna Marble, was an expressly intended third-party beneficiary, this duty of care extends to Plaintiffs.  *Id.*

In this case, Plaintiffs argue that in improperly packing the marble slabs, Savema created the potential harm that injured them.  Plaintiffs rely on *Espinal v. Melville Snow Contractors* to support the notion that a duty of care to noncontracting third parties may arise out of a contractual obligation:  where the contracting party, in failing to exercise reasonable care in the performance of his duties, "launche[s] a force or instrument of harm."  *Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 140 (2002) (quoting *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 168 (1928)).  In *Espinal* the plaintiff slipped and fell in a parking lot owned by her employer.  *Id.* at 138.  Espinal attributed her fall to the icy condition and sued Melville Snow Contractors, the company that entered into a snow removal contract with her employer.  *Id.* at 137.  Espinal alleged that Melville created the icy condition by negligently removing snow from the parking lot.  Melville moved for summary judgment, contending that it owed no duty of care to plaintiff.  *Id.*  The court clarified that

> A snow removal contractor (or one in a similar line of work) who 'creates or exacerbates' a harmful condition may generally be said to have 'launched' it.  Exacerbating or creating a dangerous condition may be a more pedestrian–or less elegant–description than launching a force or instrument of harm, but in practical terms the criteria are the same.

*Id.* at 142–43.  However, the court ultimately concluded that Melville owed no duty of care to plaintiff and therefore could not be held liable.  *Id.* at 142.  This was because Espinal failed to provide any support for her allegations that Melville's "snow removal activities" created a "dangerous icy condition" or "increased the snow-related hazard which caused [her] to slip and fall."  *Id.* at 142.  Additionally, the court concluded that "[b]y merely plowing the snow, Melville cannot be said to have created or exacerbated a dangerous condition."  *Id.*

Plaintiffs' reliance on *Flier v. Keystone Corp.*, is on firmer ground.  *Filer v. Keystone Corp.,* 128 A.D.3d 1323 (2015).  In that case, a plaintiff suffered injuries when, while unloading a crate of industrial diaphragm sections,[6]  the crate collapsed and the diaphragms, each weighing approximately 1,500 pounds, spilled out, knocking him to the ground.  *Id.* at 1323.  The plaintiff sued the manufacturer of the diaphragms, ABS, as well as the industrial metal finisher, Keystone Corporation, who shipped the diaphragms in a different configuration than usual.  *Id.*  The Appellate Division denied the defendants' motion for summary judgment, in part, because there was an issue of fact concerning whether Keystone repackaged the crates in the same manner as the crates were received from ABS, and whether "Keystone 'create[d] an unreasonable risk of harm to others, or increase[d] that risk,' by packaging the diaphragms in a vertical position without adequate stabilization."  *Id*. at 1325.

Savema packaged the marble in two bundles of seven slabs each, with the two bundles separated by a wooden rack system, and it was delivered to Colonna Marble this

---

[6] Industrial diaphragms are pump machines that assist in the process of transporting fluids.  *See* Mike Hurlbatt, *Characteristics and Best Uses of Diaphragm Pumps,* PUMP SOLUTIONS (April 15, 2016), https://pumpsolutions.com.au/characteristics-and-best-uses-of-diaphragm-pumps/

way.  Doc. 59 ¶ 11, *see also* Doc. 56-4 at 2–6.  The dispute between the parties is whether the manner in which Savema packaged the marble created the hazardous condition that caused Plaintiffs' accident.

Savema claims to have packed the marble slabs in accordance with industry practice.  Doc. 53 ¶ 12.  And despite Plaintiffs never having received a shipment of marble in a wooden rack system, the record reflects that Savema's wooden rack system for packaging marble and other stone slabs is not atypical.  *See* Doc. 57-7 at 28:12, 31:13–32:25, *see also* Doc. 57-4 at 18:18–19:7, 35:5–8.

In support, Savema relies on the OSHA Bulletin proffered by Plaintiffs.[7]  The OSHA Bulletin illustrates different methods of packing stone slabs.  One of the packing methods depicted features vertical wooden supports similar to those utilized by Savema. *See* Doc. 49-10 at 3.  Savema also cites to the training videos employees at Colonna Marble were shown *after* the incident.  Doc. 57-10 at 1–2.  In one of those videos, entitled "Material Handling Full," the employees are instructed on inspecting the rack system before unloading, staying out of the "fall shadow," and how to extract bundles of slabs from a closed-top container.[8]  The safety video also depicts marble slabs held in vertical wooden supports similar to those utilized by Savema.

Nonetheless, Plaintiffs allege that Savema "improperly packed, loaded or secured the goods" and that "in failing to provide proper access to the marble" caused their injury when unloading the marble.  Doc. 33 ¶¶ 203, 126.  Savema's expert, Martin Davis,

---

[7] Plaintiffs offered the Bulletin to show that Savema knew or should have known about the safety considerations inherent in handling marble and other stone slabs.

[8] Natural Stone Institute, *6 Material Handling Full*, YOUTUBE (June 20, 2016), https://www.youtube.com/watch?v=4KvGlLEd-1g.

asserts that because "the marble slabs were still stored in an upright position and had neither shifted nor fallen in transit" the shipment could not have been improperly packaged.  Doc. 49-3 at 6.  This is supported by a photograph of the shipping container as Savema loaded it and another photograph of the shipping container after Plaintiffs attempted to remove the marble slabs.  *See* Defense Exs. 6 and 7, Doc. 57-6.  Plaintiffs argue that even if "Savema comported with industry standards [that] does not establish as a matter of law that Savema was not negligent."  Doc. 58 at 5.  And while compliance with custom or industry practice constitutes some evidence of due care, *Miner v. Long Island Lighting Co*., 40 N.Y.2d 372, 381 (1976), "statements of defendant's expert[] that defendant 'comported with industry standards [do] not establish as a matter of law that [defendant] was not negligent.'"  *Baity v. Gen. Elec. Co*., 86 A.D.3d 948, 951 (2011) (quoting *Gardner v Honda Motor Co*., 214 AD2d 1024, 1024 (1995)).

The Court denies Savema's motion for summary judgment on the common law negligence claim because there is a genuine factual dispute as to whether the method used to package the marble slabs in this shipment contributed to the Plaintiffs' injuries.  *See Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.,* 238 F. Supp. 3d 314, 340 (N.D.N.Y. 2017) ("Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment . . . the drawing of legitimate inferences from facts, and the weighing of evidence are matters left to the jury.").

Thus, the Court concludes that because "a reasonable jury could return a verdict for the non-moving party" summary judgment must be denied.  *Senno*, 812 F. Supp. 2d at 467.

### D.  The McHugh Expert Report

Plaintiffs did not submit an expert report in this action.  They did, however, submit a rebuttal expert report responding to Savema's expert, Martin Davis of Assured Safety Management.  This rebuttal report was written by Joseph J. McHugh of  McHugh Forensic Consultants.  *See* Doc. 57-2.  The McHugh report purports to "determine whether and in what manner the involved parties contributed to this incident, and specifically to rebut the report of . . . Martin Davis."  *Id.* at 1.  McHugh rebuts Davis' finding that Savema used industry standards by asserting that "[b]ased upon the failure to warn and/or instruct as to how to extricate the marble slabs safely, industry practice and industry norms were not followed.  *Id.* at 2.  In his report, which contains four findings, McHugh asserts that "Savema failed to provide any warnings or instructions regarding the … potential dangers of unloading [,] Savema's failure was a significant contributing factor to the worker's injuries … [, and that] Savema should have included instructions concerning proper removal methods."  *Id.* at 3.

Savema moves to exclude the McHugh expert report in its entirety for two reasons:  (1) McHugh is unqualified as an expert, and (2) the report improperly attempts to raise a new legal argument in a rebuttal report.  Doc. 54 at 9.

First, Savema argues that McHugh is an unqualified layman with no relevant training or experience regarding stone handling, or stone safety, and thus is not qualified as an expert on the facts of this case.  Doc. 54 at 24–25.  District courts are accorded considerable discretion to determine an expert's qualifications.  *See* Fed. R. Evid. 104(a); *United States v. Roldan-Zapata*, 916 F.2d 795, 805 (2d Cir. 1990).  While the witness' background only qualifies him or her to testify about the "issues or subject matter[s] within his or her area of expertise," *Haimdas v. Haimdas*, 2010 WL 652823, at *2 (E.D.N.Y. Feb. 22, 2010) (citing *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 80 (2d Cir. 1997)), the "totality of a witness'[] background" matters.  *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 422 (S.D.N.Y. 2009).

The Court may admit expert testimony if the witness is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The qualification requirement is to be "liberally construed," *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, 2006 WL 2128785, at *5 (S.D.N.Y. July 28, 2006) (citing *United States v. Brown*, 776 F.2d 397, 400 (2d Cir. 1985)), and an "expert should not be required to satisfy an overly narrow test of his own qualifications[.]" *Valentin v. New York City*, 1997 WL 33323099, at *14 (E.D.N.Y. Sept. 9, 1997) (quoting *Lappe v. Am. Honda Motor Co.*, 857 F. Supp. 222, 226 (N.D.N.Y. 1994), *aff'd*, 101 F.3d 682 (2d Cir. 1996)).

McHugh is a civil engineer with over 40 years of experience in construction and construction safety. Doc. 57-3 at 1. He holds a certification in work zone safety from the International Municipal Signal Association and has completed OSHA's 30-hour Construction Industry safety training. *Id.* at 5. Additionally, his professional experience includes overseeing the construction of high-rise buildings and major bridges, and directing the installation of pre-cast concrete structures. *Id.* at 1–2. He has testified as an expert over 30 times, in support of plaintiffs and defendants since 2000. He has been retained across the country and has testified at depositions and trials in state and federal courts. *Id.* at 1, 8–14. The subjects of his testimony broadly address what agencies or actors are responsible for the injuries suffered by Plaintiffs.[9] The context of the injuries range from laborers injured at worksites, traffic accidents, and general structural problems.

---

[9] McHugh Forensic Consultants, LLC, *Case Descriptions*, https://www.mchughforensic.com/case-descriptions.html (last visited Feb. 26, 2023).

Although McHugh is not an expert in stone handling, specifically, he has sufficient construction experience in using large machinery and unloading heavy materials such that he is qualified to testify on the facts of this case. This is closely related to Colonna Marble's work because it moves, fabricates, and installs heavy marble after cutting it to size at its facility. *See* Deposition of Maria Estrada Martinez, Doc. 57-11 at 10:9–12, 49:23–25. If an expert has educational and experiential qualifications in a field "closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007).

Accordingly, the Court finds that, based on his experience, training, and education as a civil engineer, McHugh is sufficiently qualified to testify about the accident that occurred at Colonna Marble and the safe handling of the materials at issue here.

As to Savema's allegations that the McHugh Report improperly goes beyond rebuttal, the Court disagrees and declines to exclude the testimony. Savema alleges that the introduction of a new issue, that Savema's failure to provide any warnings was a significant contributing factor to Plaintiffs' injuries, was improper and beyond the scope of rebuttal. Federal Rule of Civil Procedure 26 allows rebuttal expert testimony "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii); *Hart v. BHH, LLC*, No. 15 Civ. 4804, 2018 WL 3471813, at *9 (S.D.N.Y. May 19, 2018). Additionally, Savema argues that the Report does not dispute that it properly loaded the marble slabs in the shipping container. While a rebuttal's scope "is limited to the same subject matter encompassed in the

opposing party's expert report, ... district courts have been reluctant to narrowly construe the phrase 'same subject matter' beyond its plain language." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (quoting *Allen v. Dairy Farmers of Am., Inc.*, No. 09 Civ. 230, 2013 WL 211303, at *5 (D. Vt. Jan. 18, 2013)).

"Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party." *Id.* (quoting *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03 Civ. 1851, 2008 WL 4911440, at *2 (E.D.N.Y. Nov. 13, 2008)). But "[a] rebuttal expert report is not the proper 'place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice.'" *Ebbert v. Nassau Cnty.*, No. Civ. 05-5445, 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008) (citation omitted). Nor is a rebuttal report an opportunity to correct oversights in the party's case in chief, *Lidle v. Cirrus Design Corp.*, No. 08 Civ. 1253, 2009 WL 4907201, at *4 (S.D.N.Y. Dec. 18, 2009) (citing *Crowley v. Chait*, 322 F. Supp, 2d 530, 551 (D. N J. 2004)). The "court has wide discretion in determining whether to permit evidence on rebuttal." *Scott*, 315 F.R.D. at 44 (quoting *United States v. Tejada*, 956 F.2d 1256, 1266 (2d Cir. 1992)).

Courts in the Second Circuit consider four factors, known as the *Softel* factors, on a motion to preclude expert testimony:

> (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

*Sci. Components*, 2008 WL 4911440, at *4 (*citing Softel, Inc. v. Dragon Med. & Sci. Commc'ns*, 118 F.3d 955, 961 (2d Cir. 1997)).

Here, the challenged testimony is not outside of the scope of proper rebuttal. Savema's expert concludes that the marble slabs were properly packaged in the container

in accordance with industry standards and that the "accident at issue was the result of Colonna Marble's failure to adhere to proper safety protocols and the unsafe removal of elements of the wood framing without having properly secur[ed] the marble slabs held within the framing."  Doc. 49-3 at 5–6.  Squarely within the scope, McHugh offers in rebuttal that "[b]ased upon the failure to warn and/or instruct as to how to extricate the marble slabs safely, industry practice and industry norms were not followed."  Doc. 57-2 at 2.

## IV.   CONCLUSION

For the reasons set forth above, Danesi's motion for summary judgment is GRANTED and Savema's motion for summary judgment is GRANTED in part and DENIED in part.  Savema's motion to exclude the McHugh expert testimony is DENIED.

The remaining parties are directed to appear via telephone for an initial pretrial conference on March 17, 2023 at 10:30 a.m.  The parties are instructed to call (877) 411-9748 and enter access code 3029857# when prompted.  The Clerk of Court is respectfully directed to terminate the motions, Docs. 50 and 52.

It is SO ORDERED.

Dated:   March 2, 2023
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.